[Civ. No. 11187. Fourth Dist., Div. One. Aug. 10, 1972.]

BABE M. COX, as Administrator, etc., Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE IMPERIAL COUNTY
EMPLOYEES RETIREMENT ASSOCIATION et al.,
Defendants and Respondents.

**COUNSEL**

Wien, Thorpe & Sutherland and Lowell F. Sutherland for Plaintiff and Appellant.

James H. Harmon, County Counsel, and James R. Flournoy, Assistant County Counsel, for Defendants and Respondents.

## OPINION

**WHELAN, J.**—Babe M. Cox, as administrator of the estate of Allen J. Cox, deceased, and as administrator of the estate of Roma Cox, deceased, has appealed from a judgment of dismissal following the sustaining of a demurrer to his amended complaint without leave to amend.

One of the defendants was the Board of Retirement of the Imperial County Employees Retirement Association (Association).

Plaintiff's decedent Allen J. Cox (Cox), who died October 1, 1968, was a member of Association. Roma Cox, who died October 15, 1968, was the widow of Cox.

Cox was born July 6, 1906. His widow was born June 17, 1909. Cox entered the service of the County of Imperial in November 1946. On June 14, 1968 he completed and signed a form of application for retirement effective August 1, 1968 in which he nominated his wife as beneficiary.

At the same time he signed an election as to the manner of payment of the retirement benefits, under which he would receive the maximum payment during his lifetime, with 60 percent of the same amount to be paid thereafter to his wife for her lifetime. (Gov. Code, § 31760.1.) The monthly amount to be paid to Cox was $271.24.

At the time Cox applied for retirement, at age 62, the normal life expectancy of a man of that age was 14.6 years; his wife was aged 59 and the normal expectancy of a woman of that age was 20.7 years.[1]

On May 16, 1969, plaintiff, as administrator of the estate of Cox, served on Association a written notice of rescission of "the Election of Retirement Allowance" made by Cox "while said Allen J. Cox was of unsound mind, although not entirely without understanding."

On August 12, 1970 the present action was commenced by plaintiff as administrator of the estate of Cox. After a demurrer to the complaint was filed, an amended complaint was filed on February 2, 1971, with plaintiff as administrator of the estate of Cox and administrator of the estate of his subsequently deceased widow.

The amended complaint alleged the execution by Cox of the application for service retirement and election of retirement allowance, and the notice of rescission of the election made by plaintiff as administrator of the estate

---

[1]Statistics of the U. S. Department of Health, Education and Welfare, 1963.

of Cox. It sought recovery of the accumulated contributions made by Cox alleged to be $7,040.20, with additional interest of $1,784.51.

Although the amended complaint did not allege whether the widow's estate claimed on the theory she was the designated beneficiary of Cox, or on some other theory, it is clear that the claim is asserted on behalf of the widow as designated beneficiary. That follows from the fact no claim has been made that the retirement of Cox from the county service did not become effective in accordance with the application for retirement at age 62 after more than 20 years of service, and from the fact no claim is made the then living wife who survived him was not the designated beneficiary.

In that situation what would have been the rights of the parties based upon the retirement of Cox on August 1, 1968, without having made a specific election as to the mode of receiving his retirement benefits and with his wife as designated beneficiary?

The following sections of the Government Code have relevancy:[2]

Section 31628 permits a member whose service has been discontinued other than by death or retirement to withdraw during his lifetime his accumulated contributions.

Section 31672 permits a member with at least 10 years of continuous service to retire after age 55, upon filing a written application for retirement upon a date not more than 60 days after filing the application.

Sections 31673, 31674 and 31675 provide for a retirement allowance, which as to Cox would consist of a retirement annuity, which is the actuarial equivalent of his accumulated contributions at date of retirement, and a service pension purchased by a contribution of the county equal to the annuity.

Section 31760.1 provides that upon the death of a member after retirement 60 percent of his retirement allowance should be paid to his surviving spouse for life if the spouse were beneficiary, unless the member had elected in writing filed with Association to take one of four optional methods of settlement provided in sections 31761, 31762, 31763 and 31764. Each of those optional methods of settlement contemplates a lesser retirement allowance to the member during his lifetime.

Section 31458.2 states a surviving spouse of a member who dies either before or after retirement shall be beneficiary in the absence of a specifically designated beneficiary.

---

[2]Unless otherwise specified, all section numbers referred to are those of Government Code sections.

Sections 31780 and 31781 provide that upon the death, before retirement, of a member while still in service or while suffering from physical or mental incapacity for the performance of duty which has been continuous since discontinuance of service or within one month after discontinuance of service, unless the member's contributions had been withdrawn, a death benefit should be paid the beneficiary consisting of the accumulated contributions and an additional amount contributed by the county.

Section 31765 provides that if a member dies under circumstances in which a death benefit is payable, the surviving spouse who is designated as beneficiary may elect to receive a lifetime annuity instead of the death benefit (§ 31763).

Section 31781.1 permits the surviving spouse, whether or not designated beneficiary, of a member who dies before retirement while suffering from a non-service-connected disability which would have entitled him to disability retirement to elect to receive a pension in lieu of the death benefit.

If Cox when he gave notice of retirement had not executed a designation of a specific method of settlement, he would have been entitled under sections 31673, 31674 and 31675 to receive the very benefits he specifically elected to receive; and his spouse-beneficiary would have received under section 31760.1 the very benefits he specifically elected she should receive.

Although plaintiff, in his complaint and in his memorandum of points and authorities in opposition to the demurrer, did not make any claim based upon a theory Cox had not retired prior to his death, or upon a theory the application for retirement had been rescinded, in his brief on appeal he argues as though there had been an attempted rescission of the application for retirement and as though Cox had not retired.

Plaintiff's brief on appeal discusses the various elections Cox might have made had he been of sound mind, mentioning a withdrawal of accumulated contributions under section 31628, or the election of optional settlement No. 1 under section 31761.

It is only if the service of a member is discontinued other than by death or retirement that he may withdraw his accumulated contributions (§ 31628).

While the option provided by section 31761 might be advantageous to a retiring employee with a short life expectancy who wished his widow or his estate to receive a lump sum upon his death, the exercise of any of the four options would call for an affirmative choice that plaintiff asserts Cox was allegedly incapable of making. The same is true of a withdrawal

of accumulated contributions under section 31628, which incidentally would be an abandonment of the service pension.

 Plaintiff's argument in this court that the trial court could make a disposition as though Cox had not retired has no foundation. It has one of two motivations: (1) the assumption that if Cox had been competent he would have quit his employment on June 14, 1968, and withdrawn his contributions, or that he would have elected option No. 1 under section 31761; (2) the hope it might be held that Cox, having been incompetent to do what he did do or to make any decision, would have continued on in service until death, or would have been physically or mentally incapable of doing so, and thus would have died, so that a death benefit would have been payable under section 31780.

Section 31780 is intended to take care of those situations in which a member, whether or not entitled either to a service retirement or disability retirement, had, because of physical or mental disability, not applied for either before death intervened.[3]

The system is designed primarily to provide a regular income for public employees in their less productive years. To that end there are provisions for disability retirement, which generally would not be sought by one already entitled to service retirement unless the disability were service-connected (§ 31720 et seq.).

It may be inferred from the language of section 31781.1 that section 31780 was not designed primarily with those in mind who are entitled to service retirement.

Plaintiff here has sought to have the superior court make an election other than that made by Cox himself, whether he was or was not competent when he made it. The election plaintiff would have the court make would be one that would result in a different mode of payment than that provided by section 31760.1, the unmodified plan.

It is obvious that if Cox had elected to withdraw his accumulated contributions during his lifetime and then died, or if the trial court at plaintiff's request made such a withdrawal as though giving effect to what plaintiff conceives as having been in the best interests of Cox, the estate of Cox would benefit.

If, on the other hand, the trial court were to decide as one of plaintiff's alternatives that Cox had died before retirement and that a death benefit was payable, then the widow and her estate would benefit. The widow's

---

[3]In the case of disability retirement, the application need not be made by the member personally.

estate also would be the beneficiary if it be conceived the court could and did elect for the first of the optional modes of settlement.

The interests of the two estates are not necessarily the same, and only plaintiff as the common administrator unites them.

*Phillipson* v. *Board of Administration,* 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765], held that the superior court in a divorce action had power in certain circumstances to make an election as to the mode in which matured retirement benefits should be paid. Those circumstances were that there had been a judgment making an award to the nonemployee spouse of an employee in the community property accumulated contributions of the employee spouse prior to the making by the latter of an election as to the mode of payment and that the making of such election by the court would not leave the employee spouse destitute or without means of support. In that case the court had awarded all the community property accumulated contributions to the nonemployee spouse.

In *Phillipson, supra,* 3 Cal.3d 32, 48-49, the court noted: "The actuarial value of a life pension usually far exceeds the amount of the employee's accumulated contributions plus interest. The withdrawal of these contributions for an employee with lengthy service results in the destruction of the additional value without benefit to the withdrawer. . . .

"Since an employee on terminating state employment has the right to demand his accumulated contributions, the potential for destruction of actuarial value prevails in all cases."

Section 31760 provides: "Until the first payment of any retirement allowance is made, a member or retired member, in lieu of the retirement allowance for his life alone, may elect to have the actuarial equivalent of his retirement allowance as of the date of retirement applied to a lesser retirement allowance payable throughout life in accordance with one of the optional settlements specified in this article."

This court in *Lesem* v. *Board of Retirement,* 183 Cal.App.2d 289 [6 Cal.Rptr. 608], held that under the special circumstances of that case the retired employee might change his election. The circumstances were these: Lesem retired on August 1, 1949, at age 70 as compelled by law; he then had a heart condition that led him as a medical doctor to believe he would live only about two years; he elected for Optional Settlement No. 1 (§ 31671); he died in July 1957; meanwhile in 1953 the Legislature enacted section 31760.1, which provided that upon the death of a retired member his widow should receive for life 60 percent of his retirement pension and annuity as provided when none of the four optional modes

of payment is elected, the unmodified plan; the section did not apply to those who had retired prior to its enactment; in 1955 the Legislature enacted section 31676.95 which extended the benefits of section 31760.1 to those who had retired before 1953 and had not elected one of the optional plans; in 1956 Dr. Lesem wrote the board stating he revoked the cash refund feature of the section 31761 option in order to give his wife the benefit which became available under the unmodified plan in 1953.

Based largely upon the intervening legislation that acted to the disadvantage of those compelled to make an election before 1953, this court held the revocation of the lump-sum payment to the wife and the election to have her receive a lifetime pension should be given effect. In doing so the court said, at page 302: "We reiterate that section 31760 is still effective and once a member has selected an option, it is final and cannot be changed. The only reason that a change is permitted in this case is because of the operation of section 31676.95 as applied to those members who were compelled, because of age, to retire prior to 1953."

The rights given to the employee-member to designate a beneficiary and to elect among the various optional methods of receiving the retirement benefits are personal to the member. (See *Wicktor* v. *County of Los Angeles,* 141 Cal.App.2d 592, 599 [297 P.2d 115].)

While in *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, the power of the court to elect, in effect, to withdraw the accumulated contributions was recognized, that power was only a necessary incident of its power to make a division of community property.

If we suppose the court at the instance of the personal representative of a deceased member might set aside an election made by the member on the ground of mental incompetency, it could not make an election as to an alternative measure; the only result would be the automatic operation of the unmodified method of settlement.

Whatever rights accrued to the widow by reason of the death of Cox were unassignable (§ 31452).

So far as Association was then concerned, the widow's right was to receive 60 percent of the monthly payment to which Cox would have been entitled during his lifetime. The widow did not attempt to obtain a change in the method of payment of the benefits to which she became entitled as beneficiary or surviving spouse. Although the administrator of the estate of Cox purported to rescind the election executed by Cox, no attempt was made by the widow's administrator to make a claim before action filed to any other rights than to the lifetime pension.

Since the rights of the surviving spouse arose upon the death of the member, any attempt to set aside the election made by him or to elect a different method of settlement would be adverse to the widow's rights.

It is clear that what is here involved is not the matter of securing to the deceased member or to his widow, unfortunately deceased, the benefits which the retirement system was designed to provide, an assured income during their lives.

Here, Cox had applied for retirement as alleged by the complaint. From the point of view of his widow and beneficiary, considered as having normal expectancy, there would have been no advantage in having the death benefit over receiving the life pension under the unmodified method of settlement.

In either event, however, the personal representative of Cox has no standing to set aside the member's selection of the unmodified method of settlement or the application for retirement as a result of which rights vested in the widow.

Since plaintiff sought declaratory relief, it was error for the trial court to refuse to entertain the petition.

Any declaration of the rights and duties of the parties among themselves must be that the estate of Cox could receive no monetary relief; even if his election as to the mode of settlement were rescinded the court could not elect a different method; and the method selected by Cox was that which would have been applicable if his positive act of selection were rescinded (§ 31760.1). The only right the estate of Cox had was to retain the monthly payments made during Cox's lifetime.

The estate of the widow would be entitled to a declaration that her rights terminated upon her death. The options given the surviving spouse of an employee member are not many. Under section 31765, if the employee dies under such circumstances that a death benefit is payable, the surviving spouse, who survives more than 30 days if designated beneficiary, may elect to receive a pension rather than a lump-sum death benefit. No right is given the beneficiary or spouse to choose a different method of settlement than that selected by the retired employee-member.

In those circumstances the error in refusing declaratory relief was not reversible error. (*Moss* v. *Moss,* 20 Cal.2d 640, 643 [128 P.2d 526, 141 A.L.R. 1422]; Code Civ. Proc., § 1061.)

We have not attempted to pass upon the question whether an application

for retirement from the service of the county, or a written declaration as to the mode of settlement of retirement benefits, is a conveyance or contract within the meaning of Civil Code section 39. The contract with the county is one of employment and is different from the contract with the retirement system, which is embodied in the statutes creating it.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.